IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02993-RBJ-NRN

CALVIN JOHNSON,

Plaintiff,

v.

CAPTAIN "LITTLE",
LIEUTENANT WINGERT,
LIEUTENANT GLISSMAN, and
SERGEANT LEWIS,

Defendants.

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
(DKT. #36)**

**N. Reid Neureiter
United State Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #37) issued by Judge R. Brooke Jackson referring Defendants Lieutenant Wingert, Lieutenant Glissman, Captain Little, and Sergeant Lewis's (collectively "Defendants") Motion to Dismiss Second Amended Complaint. (Dkt. #36.) The Court has carefully considered the motion and Plaintiff Calvin Johnson's Response.[1] (Dkt. #37.) On December 11, 2018, the Court heard argument on the subject motion. (Dkt. #59.) The Court has taken judicial notice of

---

[1] Mr. Johnson's Response (Dkt. #37) also requests that the Court reinstate various claims that Judge Lewis T. Babcock dismissed on April 5, 2018. (*See* Dkt. #36.) The Court declines to do so. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.").

the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and makes the following recommendation.

## I. BACKGROUND

The following allegations are taken from the relevant, non-dismissed portions of Mr. Johnson's Second Amended Prisoner Complaint. (Dkt. #25.) Mr. Johnson is a prisoner in the custody of the Colorado Department of Corrections ("CDOC") at the Sterling Correctional Facility ("SCF") in Sterling, Colorado. He asserts two individual capacity claims for relief against Defendants, all of whom are correctional officers.

In the first claim, Mr. Johnson alleges that Defendant Little violated his Eighth Amendment rights by being deliberately indifferent to his mental illness. Mr. Johnson claims that he informed Captain Little that SCF staff members were retaliating against him for filing grievances, threatening him with excessive force, and deliberating triggering his post-traumatic stress disorder ("PTSD"), which had a severe impact on his mental state. (*Id.* at 7.) He alleges that Captain Little denied his request to be moved to a different unit and condoned the actions of his staff. (*Id.* at 9-10.) Mr. Johnson also asserts that he was subjected to excessive force by prison staff on December 26, 2017. (*Id.* at 8.)

Mr. Johnson contends in claim two that Lieutenant Glissman, Lieutenant Wingert, and Sergeant Lewis also subjected him to cruel and unusual punishment and retaliated against him for exercising his constitutional rights. Claim two relates to disciplinary reports written by Lieutenant Glissman, Lieutenant Wingert, and Sergeant Lewis on November 30, December 2, and December 6, 2017, respectively, in retaliation for Mr. Johnson's filing of grievances and lawsuits. (*Id.* at 10-11.) Mr. Johnson alleges that

these Defendants "psychological[ly] torture[d]" him by writing disciplinary reports which led to him not having a television or library books in his cell. (*Id.* at 11.) Mr. Johnson asserts that these disciplinary reports were used to intentionally trigger his mental illness "to cause behavior they knew I'd exhibit as a result and also just lying on me in disciplinary reports." (*Id.*)

Defendants maintain that they are entitled to qualified immunity because Mr. Johnson's allegations fail to state actionable claims for relief.

## II. LEGAL STANDARDS

### a. Pro Se Plaintiff

Mr. Johnson is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**b. Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to

relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### c. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether the plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in

5

the particular case at hand." *Id.* at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

Qualified immunity is immunity from suit, rather than a mere defense to liability. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). If a court finds that a defendant is subject to qualified immunity, the court may dismiss with or without prejudice. *Breidenbach v. Bolish*, 126 F.3d 1288, 1294 (10th Cir. 1997); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000).

### III. ANALYSIS

Defendants argue that Mr. Johnson's Second Amended Prisoner Complaint fails to state an Eighth Amendment excessive force claim against Captain Little. They further argue that Mr. Johnson's retaliation claims against Lieutenant Wingert, Lieutenant Glissman, and Sergeant Lewis are fatally deficient. Accordingly, Defendants assert that they are entitled to qualified immunity.

**a.     Claim One Against Captain Little**

Defendants contend that Mr. Johnson has not sufficiently alleged that Captain Little acted "maliciously or sadistically," and therefore failed to make the requisite showing for an excessive force claim. *See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1294 (D. Colo. 2009) ("[T]he touchstone inquiry in an excessive force claim is whether the force was applied in a 'good-faith effort to maintain and restore discipline or maliciously

6

and sadistically' to cause harm.") (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001)).

The Court agrees that to the extent that Mr. Johnson alleges that Captain Little himself is liable for excessive force, that claim fails. The December 26, 2017 incident of excessive force appears to refer to unidentified "prison staff" who "cut off [Mr. Johnson's] oxygen supply for a long time with the use of weaponized gas trying to suffocate [him] to death." (Dkt. # 25 at 9.) However, when a defendant is sued in his individual capacity, the allegations must show the defendant *personally participated* in the alleged violation. *See Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir.1976) (stating that personal participation is an essential allegation in a § 1983 claim). Mr. Johnson does not allege specific facts linking Captain Little to what Mr. Johnson describes as the attempted murder. Indeed, he fails to offer any real details about the incident at all. Accordingly, Mr. Johnson does not state an excessive force claim against Captain Little.

However, the Court does not interpret Mr. Johnson to actually be asserting such a claim. Instead, he alleges that Captain Little was deliberately indifferent to his mental health needs by condoning the abusive behavior of SCF staff members. (Dkt. #25 at 8.) This requires a different legal analysis. Under the Eighth Amendment, a prison official may not act with deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The law is well established that a failure to provide medical treatment for serious medical needs, including mental health needs, constitutes cruel and inhuman punishment if the failure results from a deliberate indifference on the part of prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

7

*See also Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). Two prongs must be met to violate this proscription: the prisoner's mental health needs must be objectively serious, and the prison official must subjectively know of and disregard an excessive risk to the inmate's health or safety. *See Rashad v. Doughty*, 4 F. App'x 558, 561 (10th Cir. 2001).

Moreover, Captain Little cannot be liable for constitutional violations merely due to his supervisory position. *See Sherman v. Klenke*, 653 F. App'x 580, 591 (10th Cir. 2016) (recognizing that a defendant cannot be liable under a *respondeat superior* theory in a Section1983 case). Instead, there must be showing that "an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir.1988).

Curiously, Defendants fail to address Mr. Johnson's deliberate indifference allegations. It is true that Mr. Johnson states that Captain Little told him "that in a use of force situation that he'd personally make sure I get hurt even if his staff already have me under control shows that he not only knows of the substantial risk of harm, but becomes guilty of the threat of excessive force himself." (Dkt. #25 at 9.) But he also alleges that Captain Little was deliberately indifferent because he knew and permitted prison staff to deliberately provoke, exacerbate, and "trigger" his mental illness, when all involved were aware that this would lead to violence between Mr. Johnson and staff.

Accepting Mr. Johnson's allegations as true, and noting that Defendants do not challenge them in their motion, the Court finds that Mr. Johnson has adequately pled that he suffers from a sufficiently severe mental illness, specifically, PTSD. He also

8

alleges that he informed all the Defendants about his condition, both verbally and in writing. Finally, Mr. Johnson alleges that Captain Little ignored his complaints that CDOC staff members were retaliating against him for filing grievances, threatening him, and intentionally provoking him, knowing that he would, given his fragile mental state, lash out at them, which would lead to further disciplinary sanctions.[2] By alleging that Captain Little both condoned of and participated in this vicious cycle, Mr. Johnson has stated a claim under the Eighth Amendment. Accordingly, the Court recommends that Defendants' motion to dismiss claim one be denied.

### b. Claim Two Against Lieutenant Glissman, Lieutenant Wingert, and Sergeant Lewis

Mr. Johnson alleges that, like Captain Little, Lieutenant Glissman, Lieutenant Wingert, and Sergeant Lewis were deliberately indifferent to a substantial risk of harm. He also alleges that they retaliated against him for filing grievances.

Again, Defendants focus only on the retaliation claim and ignore the deliberate indifference allegations. Mr. Johnson alleges that these Defendants were aware of his "mental status" and used retaliatory grievances, lies, and threats "to provoke the actions from me they know they'll get when they do things that activate my psychological triggers." (Dkt. #25 at 10.) While these allegations may be improbable, they are not implausible, especially when they remain unchallenged by Defendants.

Turning to the retaliation claim, it is well-settled that prison officials may not retaliate against prisoners for filing administrative grievances. *Leek v. Miller*, 698 F. App'x 922, 925 (10th Cir. 2017) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir.

---

[2] Whether this constitutes a "substantial risk of serious harm" is a matter that may be raised in future motions but is not currently before the Court.

1991)). Nevertheless, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison" and "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

To state a First Amendment retaliation claim against a government official, a plaintiff must prove three elements:

> (1) That the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Before even getting to the applicable elements, however, the Court notes that Mr. Johnson's claims that the disciplinary reports against him were false and retaliatory necessarily implicate the validity of the disciplinary charges themselves. *See Brown v. Cline*, 319 F. App'x 704, 706 (10th Cir. 2009). Unless Mr. Johnson can show that the disciplinary convictions were invalidated, his retaliation claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). *See id.* Mr. Johnson has not done so here.

Accordingly, the Court recommends that Defendants' motion to dismiss claim two be granted as to the retaliation allegations, and denied as to the deliberate indifferent allegations.

### c. Qualified Immunity

Finally, the Court concludes that Defendants are not entitled to qualified immunity. Mr. Johnson has plausibly alleged that Defendants were deliberately indifferent to a substantial risk of harm to Mr. Johnson and, as noted above, it is clearly established that prisoner officials may be liable for deliberate indifference. *See Farmer,* 511 U.S. at 833.

## IV. RECOMMENDATION

**WHEREFORE**, for the foregoing reasons, it is hereby **RECOMMENDED** that referring Defendants Lieutenant Wingert, Lieutenant Glissman, Captain Little, and Sergeant Lewis's Motion to Dismiss Second Amended Complaint (Dkt. #36) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- **DENIED** as to claim one and claim two as it relates to deliberate indifference under the Eighth Amendment; and
- **GRANTED** as to claim two as it relates to First Amendment retaliation.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);

*Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

BY THE COURT

Date: February 12, 2019  
Denver, Colorado

*[signature: N. Reid Neureiter]*

N. Reid Neureiter  
United States Magistrate Judge